IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANITA K. R., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:22-CV-112-JFJ |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Anita K. R. seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.    General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician;

the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th

Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Procedural History and the ALJ's Decision

Plaintiff, then a 54-year-old female, protectively applied for Title II disability insurance benefits on June 9, 2020, alleging a disability onset date of April 1, 2016. R. 15, 152-153. Plaintiff's claim for benefits was denied initially on August 19, 2020, and on reconsideration on September 28, 2020. R. 65-82. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted a telephonic hearing on August 11, 2021. R. 34-64. The ALJ issued a decision on September 28, 2021, denying benefits and finding Plaintiff not disabled because she could perform both past relevant work and other work existing in the national economy. R. 15-29. The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2018. R. 17. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of April 1, 2016, through her date last insured. R. 18. At step two, the ALJ found that Plaintiff had the following severe impairments: obesity and chronic obstructive pulmonary disease ("COPD"). *Id.* The ALJ found the following impairments to be non-severe: bilateral knee joint space narrowing, varus, spurring,

and arthritic changes; cavus foot, tibial tendinitis left, peroneal tendinitis right, plantar fasciitis right, calcaneal spur bursitis right, and peripheral neuropathy; hypertension; and dysphagia. *Id.* The ALJ further found the following impairments to be non-medically determinable: depression, low back pain with sciatica, neck pain, elbow pain, nerve damage, pinched nerve, lumbar degenerative disc disease, left wrist carpal tunnel, thyroid problem, right hip problem, left arm problem, left hand problem, heart problem, and hyperlipidemia. R. 19. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 19-20.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that, through the date last insured, Plaintiff had the RFC to perform light work, except as follows:

> [N]o climbing ropes, ladders, or scaffolds; crouching; or crawling. She could occasionally climb ramps and stairs; stoop; and balance on uneven, moving, or narrow surfaces. No work involving any exposure to extreme hot temperatures (over 90 degrees), extreme cold temperatures (under 30 degrees), or excessive humidity (over 80%). She could have occasional exposure to dust, fumes, odors, gases, and other pulmonary irritants. No work involving any exposure to unprotected heights or dangerous moving machinery.

R. 20. At step four, based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff was able to perform past relevant work as an office clerk, as both actually and generally performed. R. 27. In addition, based on the VE's testimony, the ALJ found at step five that Plaintiff could perform other unskilled light work, such as a Small Product Assembler, Electronics Assembler, and Packer/Inspector. R. 28-29. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 30. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled between April 1, 2016, and June 30, 2018.

4

**III.   Issues**

Plaintiff raises three allegations of error on appeal: (1) the ALJ failed to apply the correct legal standards when assessing the medical opinions of record; (2) the ALJ's consistency analysis was improper; and (3) the ALJ failed to consider the combined effect of all of Plaintiff's impairments in assessing the RFC, resulting in errors at steps four and five. ECF No. 16.

**IV.   Analysis**

    **A.   ALJ's Analysis of Medical Source Opinion Evidence Was Legally Proper**

Plaintiff argues the ALJ committed reversible error by improperly evaluating opinions from the state agency medical reviewers. *See* R. 65-82 (agency reviewer opinions). For claims filed after March 27, 2017, such as Plaintiff's claim, 20 C.F.R. § 404.1520c provides that the ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ now need only articulate how persuasive she finds each medical source's opinion. 20 C.F.R. § 404.1520c(b). Persuasiveness is based primarily on an opinion's supportability and consistency, and the ALJ must explain how she considered those two factors. 20 C.F.R. § 404.1520c(b)(2).[1] The ALJ may, but is typically not required to, discuss other considerations that may affect the persuasiveness of a medical opinion, such as the source's relationship with the claimant, the source's area of specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(b)(2)-(c).

In this case, agency reviewer William Oehlert, M.D., gave an initial opinion in August 2020, and reviewer James Metcalf, M.D., gave a reconsideration opinion in September 2020. Dr.

---

[1] For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

Oehlert and Dr. Metcalf both noted Plaintiff's alleged onset date was April 1, 2016, and her date last insured was June 30, 2018. R. 70, 79. Dr. Oehlert and Dr. Metcalf both reviewed Plaintiff's medical records dated between December 2017 and January 2018, concluding that the evidence in the file was insufficient to rate the severity of her impairments prior to the date last insured. R. 70-71, 79-80.

The ALJ assessed the opinions of both agency physicians. The ALJ did not find their opinions persuasive. R. 26. The ALJ explained that their opinions were "not supported by their review of the evidence citing acute bronchitis, BMI 49.23, bilateral knee tenderness, mild right limp, and patellar discomfort." *Id.*

Plaintiff argues the ALJ's assessment of the agency opinions was improper, because the agency reviewers considered only later evidence without considering earlier evidence Plaintiff submitted as part of a previous application for benefits. Plaintiff points out that she requested a reopening of her prior claim, which had been denied on June 28, 2019. R. 40. Plaintiff asserts that the ALJ never ruled on her request, which amounts to a *de facto* reopening of the prior application. ECF No. 16 at 4-5 (citing *Taylor for Peck v. Heckler*, 738 F.2d 1112, 1115 (10th Cir. 1984)). Plaintiff argues that, in light of this *de facto* reopening of her prior application, the ALJ should have considered prior medical opinion analysis and evidence from the prior claim. Plaintiff does not indicate what "prior evidence" should have been considered, nor does she indicate what any prior medical opinion might show, and no such prior opinions appear in the record before the Court. Plaintiff further argues the ALJ's consideration of the current agency opinions, which did not have the benefit of prior evidence to review, was incomplete and therefore the ALJ had insufficient evidence from which to form an RFC.

Plaintiff's arguments fail. First, Plaintiff's prior claim alleged the same onset date as the current claim: April 1, 2016. R. 68, 77. Plaintiff's date last insured was June 30, 2018. The prior

6

claim involved the same period of alleged disability at issue in this claim of April 2016 through June 2018. Therefore, even if the ALJ "reopened" Plaintiff's prior claim by failing to rule on Plaintiff's request, the reopening is immaterial to the disability determination. Plaintiff had the opportunity and responsibility to submit any evidence relevant to the period of April 2016 through June 2018. As noted in the decision, the ALJ considered evidence dating back to 2016. R. 22 (citing medical records dated November 5, 2016). Plaintiff has not pointed to any "new" evidence the ALJ failed to consider in this regard, nor has she shown that prior agency opinions exist that are relevant to her current claim but that the ALJ failed to consider. *See* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are . . . disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are . . . disabled. . . . This duty is ongoing and requires you to disclose any additional related evidence about which you become aware."); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").

Second, the ALJ was not required to rely on any medical source opinion to generate a proper RFC. It is the ALJ's, not the agency physician's, duty to assess Plaintiff's RFC. *See* 20 C.F.R. § 404.1546(c) (stating that it is the ALJ's responsibility for assessing RFC at the ALJ hearing level); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record"); *Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) (explaining that "[t]he final responsibility for determining RFC rests with the Commissioner, based upon all the evidence in the record, not only the relevant medical evidence"). Rather, the Tenth Circuit has rejected the argument "that an ALJ may not make an RFC finding that differs from a physician's opinion unless the ALJ relies on a conflicting medical opinion." *Berumen v. Colvin*, 640 F. App'x 763, 767 (10th Cir. 2016). The

ALJ was required to consider the agency reviewers' opinions, but he also considered the entirety of the record. Therefore, any failure by the agency reviewers in summarizing the record did not automatically translate to a deficiency in the ALJ's RFC, as Plaintiff appears to suggest. To the contrary, the ALJ found the agency opinions not persuasive, which indicates the ALJ did not rely on those opinions and considered other records in determining the RFC.

B.  **ALJ's Consistency Analysis Was Proper**

Plaintiff argues the ALJ's consistency analysis was improper. In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *7 (Mar. 28, 2016). If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. § 404.1529(c)(3).[2]

---

[2] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). If the ALJ sets forth the specific evidence she relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*.

Here, the ALJ found that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record." R. 22. As support, the ALJ explained that, despite her limitations, she had a normal gait, her BMI was down in the 40s, she actively cared for her father, her lungs were clear, her chest x-rays were normal, a May 2017 examination found no gross motor or sensory deficits, and in July 2017 she had one COPD exacerbation with wheezing. R. 25 (citing R. 275-277, 354-355, 371-373, 453, 455-462, 654, 667, 820-821). Regarding Plaintiff's foot pain, the ALJ noted she was treated conservatively with medication, stretching, ice, supportive shoe gear, and a cam boot. *Id.* (citing R. 256-259).

Plaintiff argues the ALJ's consistency analysis was erroneous, because the ALJ failed to consider Plaintiff's combined foot pain, knee pain, and hypertension. Additionally, Plaintiff contends the ALJ erroneously found Plaintiff's shortness of breath was caused by COPD, rather than heart problems.

Plaintiff's arguments are unpersuasive. Regarding Plaintiff's pain, she points to an April 2018 podiatry record indicating pain with walking. R. 258-259. Plaintiff's podiatrist recommended stretching and icing, and a cam boot. R. 259. However, the ALJ discussed this

9

record as evidence that Plaintiff's treatment for foot pain was conservative.  R. 25 (citing R. 258-259).  The ALJ plainly did not ignore this record or fail to consider Plaintiff's alleged pain when walking.  Other records cited by Plaintiff fall well outside the relevant period ending June 2018.  R. 260 (January 2019 podiatry visit), R. 263 (January 2020 cardiovascular visit), R. 279 (September 2019 primary care visit), R. 822 (July 2020 cardiovascular visit).

Plaintiff further alleges the ALJ should have explained what additional treatment was required for her impairments, when she followed her prescribed medication regimen and her providers' advice.  However, it is appropriate for the ALJ to consider the type of treatment a claimant receives in evaluating the severity of Plaintiff's symptoms.  *See* SSR 16-3p, 2017 WL 5180304, at *9 (explaining that "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record").  Contrary to Plaintiff's argument, there is no requirement for the ALJ to suggest additional treatment options to claimants who generally follow conservative treatment for their conditions.

Regarding Plaintiff's shortness of breath, Plaintiff alleges that the ALJ's consistency findings, including notation that Plaintiff was not hospitalized for COPD (R. 19), were based on a misunderstanding of the record, because Plaintiff was "never treated nor assessed with COPD."  ECF No. 16 at 11.  In support, Plaintiff relies on an October 2019 medical record, in which Plaintiff stated she "was told she does not have COPD or Asthma by Dr. Hancock," and she was assessed with cardiomyopathy.  R. 265-267.  Plaintiff also refers to numerous records post-dating the June 2018 date last insured, in an attempt to explain that Plaintiff's previous COPD assessment was incorrect.  *See* ECF No. 16 at 11 (citing R. 268-270, 343, 345, 510, 511).

10

Plaintiff's argument fails. Despite her repeated insistence that she was never diagnosed with COPD during the relevant period, the record repeatedly contains this very diagnosis. In July 2017, primary care records indicate Plaintiff complained of shortness of breath and she alleged she was unable to walk for more than 30 yards. R. 455. Plaintiff's physician assessed her with COPD exacerbation, noting it was "presumed" until pulmonary function tests were completed. R. 456. *See also* R. 459-461 (COPD listed as ongoing problem, progress notes stated she "[c]arries diagnosis of COPD although no history of PFTs," and she was assessed with COPD in May 2017) R. 457 (COPD listed as ongoing problem in June 2017), R. 451 (COPD listed as ongoing problem in September 2017). Plaintiff points to no evidence, other than her later statement in October 2019, to indicate the COPD diagnosis was incorrect or otherwise unsupported in the record during the relevant period. By contrast, Plaintiff was not diagnosed with cardiomyopathy until September 2019, more than a year after the date last insured. R. 270 (assessing cardiomyopathy as a "[n]ew finding w/o heart failure"). Therefore, the Court identifies no error in the ALJ's attribution of Plaintiff's shortness of breath to COPD, or in the ALJ's discussion of Plaintiff's consistency related to her walking ability.

In sum, the ALJ's discussion of Plaintiff's subjective complaints and the objective evidence satisfies 20 C.F.R. §§ 404.1529(c)(3) and SSR 16-3.

    **C.**    **Plaintiff's RFC Is Supported by Substantial Evidence**

In her third allegation of error, Plaintiff simply repeats her argument that the ALJ should have accounted for Plaintiff's cardiomyopathy, rather than COPD, in determining the RFC. ECF No. 16 at 13-15. As explained above, Plaintiff was diagnosed with cardiomyopathy only after the date last insured, and she was repeatedly diagnosed with COPD during the relevant period. Plaintiff points to no evidence indicating the COPD diagnosis was incorrect at that time, apart from Plaintiff's own unsupported statement in October 2019 that she "was told she does not have

COPD or Asthma by Dr. Hancock." R. 266. Based on that statement alone, the ALJ was not obliged to conclude that the COPD diagnosis was incorrect during the relevant period. Correspondingly, the ALJ did not err by not considering myocarditis in combination with Plaintiff's other impairments occurring during the relevant period.

## V. Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 18th day of September, 2023.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**